VICENTE QUILINCHINI, Petitioner, *v.* INDUSTRIAL COMMISSION OF PUERTO RICO, ETC., Respondent.

No. CI-65-1.     Decided April 29, 1966.

*Virgilio Brunet* for petitioner. *Donald R. Dexter, Elba de Jesús de Correa,* and *G. Méndez Muñoz* for the Manager of the State Insurance Fund.

First Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Hernández Matos, Mr. Justice Rigau, and Mr. Justice Dávila.

MR. JUSTICE DÁVILA delivered the opinion of the Court.

Petitioner is a farmer who for years has been insured with the State Insurance Fund. On November 30, 1962, the Manager sent him a Notice for the Collection of Workmen's Insurance Premiums. He notified petitioner of the preliminary assessment of the premiums corresponding to the year 1962–63 on the basis of a total payroll of $62,643.16. The amount to be paid was $3,139.46, from which the sum of

$1,043.15 corresponded to the previous year after the final liquidation. The premium for the year 1962–63, after the corresponding bonuses, amounted to $2,096.31. The payment corresponding to the first semester which amounted to $2,091.31—half of the premiums for 1962–63 plus the deficiencies of the previous year—should be paid on or before December 10, 1962, and that of the second semester— $1,048.15—on or before January 31, 1963. It was not until January 9, 1963, that the employer made a payment in the amount of $1,613.30. On May 31, 1963, the Head of the Collector's Office of the Fund wrote a letter to the employer urging him to pay the balance of the premium assessed for the year 1962–63 amounting to $1,526.16. He did not send it.

During the year 1962–63 five of the workers who worked for the employer, petitioner herein, suffered accidents. The Manager declared the employer not insured because the total payment of the premium assessed had not been made. The employer alleges that the payment made on January 9, made the policy effective.

He maintains that the Manager is under the obligation to assess the rate or premium on the basis of the payroll return required by law to be filed by the employer. He maintains that once the employer has filed his payroll return, the Manager cannot alter it unless, as provided by § 25 "he makes a false or fraudulent return which, according to the experience obtained in connection with similar operations, is evidently inadequate."

The employer reported that his total payroll for the year 1961–62 amounted to $51,748.88. It corresponded to:

| | |
|---|---|
| General Agriculture | $ 1,863.73 |
| Sugarcane Agriculture | 31,119.04 |
| Dairies | 6,308.23 |
| Domestic Service | 1,120.00 |

| Clerks and Draftsmen | 6,229.54 |
| Building Maintenance | 3,728.64 |

Upon receiving this return the Manager accepted all the above specified items but altered the one referring to sugarcane agriculture and fixed it in $43,393.02.

Section 27 of the Workmen's Accident Compensation Act, 11 L.P.R.A. § 28 (1962 ed.), establishes that "It shall be the duty of every employer to file with the Manager [of the State Insurance Fund] not later than July 20 of each year, a statement showing the number of workmen employed by said employer, the kind of occupation or industry of said workmen, and the total amount of wages paid to said workmen or industry during the preceding fiscal year. . . ." The premium provided in §§ 25 and 26 of the Act shall be computed on the total amount of wages reported in that statement. Section 25 establishes that "The premiums for regular or permanent employers shall be levied as soon as the payroll return . . . is received in the office of the Manager, the basis therefor, *subject to investigation and revision by the Manager*, to be the total amount paid by the employer for wages, salaries, and other compensation paid to the laborers employed by him during the previous year and who were or would have been entitled to the benefits of this act." (Italics ours.) And further on § 25 provides that "*If any employer fails to make and submit the payroll return on the date fixed by law, or in accordance therewith, or if wilfully or otherwise he makes a false or fraudulent return which, according to the experience obtained in connection with similar operations, is evidently inadequate, the Manager, through his duly authorized agents, shall make the return from his own knowledge and in accordance with the information and data he may have obtained.*" (Italics ours.) And § 19-10(d) of the Workmen's Accident Compensation Insurance Regulations provides that "The estimated payroll shall always be subject

to the approval of the Manager of the State Insurance Fund."[1]

∎ From the above-copied citations we see that according to the Regulations the estimated payroll shall be subject to the approval of the Manager and that the latter is authorized, pursuant to the act, to make a return from his own knowledge and in accordance with the information and data in his possession if he considers that according to the experience obtained in connection with similar operations, the payroll return is inadequate.

∎ In the instant case the Manager accepted all the items in the employer's payroll return except the one concerning sugarcane agriculture. Evidently in the case of the cultivation and harvesting of sugarcane, the Manager is in a position to determine the average cost of cultivating, harvesting and transporting to the mill a ton of cane. The sugarcane growers submit to him annually their costs and by dividing by the tons harvested, the Manager is able to determine the cost per ton in connection with the entire island as well as with specific areas or districts. Thus, with this data which is in his possession, he is able to decide whether the employer's return is inadequate or not. Now then, if the employer believes that the Manager acted arbitrarily, he has the opportunity of proving it before the Commission. He may introduce the pertinent evidence for that purpose, but he should not rely on the legal point invoked by the petitioner herein. See *Figueroa* v. *Industrial Commission*, 64 P.R.R. 598 (1945) where the Manager of the Fund disregarded the payroll reported by the employer and fixed the premium on the basis of a cost of $2 per ton, in accordance with the number of tons of cane ground by petitioner and taking into account the average cost which was uniform for all the employers in the same industry. We upheld the Manager in this point.

---

[1] These Regulations have the force of law. *Ready Mix Concrete* v. *Industrial Commission*, 92 P.R.R. 35 (1965); *Monllor & Boscio* v. *Industrial Commission*, 89 P.R.R. 389 (1963).

In the instant case the employer reported that his payroll for sugarcane during the year 1961–62 was $31,119.04 and the Manager modified it increasing it to $43,393.07. It is interesting to state that when the investigation of the books requested by the employer was carried out it was found that the total amount of the payroll corresponding to the cultivation, harvesting, and transportation of cane was $40,200.27, which amount was nearer to the one established by the Manager than to the one reported by the employer.[2]

Employer's contention that the Manager is under the obligation of levying the premium on the basis of his payroll return is untenable. It would affect adversely the efficient operation of the Fund, for once an employer reports the amount of his payroll, the Manager could not modify it until having carried out an investigation of the books of the employer. The Fund certainly does not have the facilities to make annually all the investigations that would be required if that rule were adopted. This would affect the effective operation of the Fund and to keep it solvent it would be necessary to increase the premiums. Thus, the employers will not benefit at all, for although the annual rates would be levied on a smaller payroll the premium would be higher.

The decision appealed from will be affirmed.

---

[2] From the investigation practiced by the Fund covering several years, substantial deficiencies appeared as to the payroll reported by employer for the sugarcane agriculture and the outcome of the investigation which was:

| Year | Payroll as Reported | Payroll as Investigated |
|------|--------------------|-----------------------|
| 1958–59 | $23,046.40 | $37,798.82 |
| 1959–60 | 23,831.19 | 30,971.64 |
| 1960–61 | 32,127.01 | 42,771.68 |